**UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF CONNECTICUT**

-------------------------------------------------------------------
CHRISTINE GRAICHEN,                                  :    CIVIL ACTION NO.
                                                     :
                             **Plaintiff,**            :
                                                     :
    -against-                                   :
                                                     :
THE CONNECTICUT NOVELTY COMPANY d/b/a                :
MALLOVES JEWELERS, and MARC LEVIN,                   :
                         **Defendants**           :    FEBRUARY 6, 2024
-------------------------------------------------------------------


**<u>AMENDED COMPLAINT</u>**

**<u>Introduction</u>**

1.      This is an action brought by Plaintiff Christine Graichen as a result of the unlawful, retaliatory, discriminatory and harassing actions of the Defendants, Marc Levin and The Connecticut Novelty Company d/b/a Malloves Jewelers ("Malloves"), in the termination of Plaintiff's employment in violation of the Connecticut Fair Employment Practices Act ("CFEPA") as well as common law claims of intentional infliction of emotional distress.  Additionally, Plaintiff asserts claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (hereinafter "FLSA") and the Connecticut Minimum Wage Act, Conn. Gen. Stat. §31-58 *et seq*. (hereinafter "CMWA").

**<u>Jurisdiction</u>**

2.      This Court has subject matter jurisdiction over this matter pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331 and 1337 because it asserts a claim under the FLSA.

3.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      On or about June 23, 2023, Plaintiff filed a charge of discrimination and retaliation against Malloves Jewelers with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), alleging sexual harassment, gender discrimination, hostile work environment and retaliation.  Said charge was designated as CHRO No. 2330610.

5.      On or about June 23, 2023, Plaintiff filed a charge of discrimination against Defendant Levin with the CHRO alleging sexual harassment, gender discrimination, hostile work environment and retaliation.  Said charge was designated as CHRO No. 2330611.

6.      On or about November 21, 2023, Plaintiff requested a Release of Jurisdiction for each of the actions referenced above (CHRO Nos. 2330610 and 2330611) from the CHRO to pursue her claims under state law.  The CHRO issued Releases of Jurisdiction for each of these matters on November 28, 2023.  Plaintiff is bringing these actions within 90 days of receiving the Releases of Jurisdiction for each of these matters.

**Parties**

7.      Plaintiff, Christine Graichen ("Plaintiff" or "Ms. Graichen") is a female residing at all relevant times in Middlefield, Connecticut.  At all times relevant to this Complaint, Plaintiff was an employee of Defendant Malloves.

8.      Defendant Malloves is a Connecticut corporation with its principal place of business located at 404 Main Street, Middletown CT 06457.

9.      Defendant Malloves is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

10.      Defendant Malloves has at least five employees.

11.      Defendant Malloves is an employer within the meaning of, and subject to the provisions of CFEPA.

2

12.     Defendant Malloves has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

13.     Defendant Marc Levin is an individual residing in Connecticut.  Defendant Levin owns and operates Malloves. As such, Defendant Levin is responsible for setting hours and wages for all Malloves' employees, including the Plaintiff.

14.     Within the three years prior to the filing of this Complaint, Defendant Malloves had an annual gross volume of sales in excess of $500,000.

**Background**

15.     Plaintiff was employed by Defendants from approximately 1997 to March 2023. At all relevant times, Plaintiff worked primarily as an Office Manager at Malloves, under the supervision of Defendant Levin.

16.     Plaintiff was a non-exempt employee under the FLSA.

17.     Plaintiff performed job duties and responsibilities that render her non-exempt under the FLSA. Plaintiff's job duties included coordinating all marketing efforts, including special events, the store's website, designing billboards, television commercials and other advertising, as well as phone calls, emails, social media and text messages. Plaintiff was also responsible for tracking monthly Excel sheets for entering credit card totals and sales numbers, meeting monthly with the store's personal accountant to balance the books, comparing the details in the paper ledger with the Excel numbers and the point of sale programs. Plaintiff handled Human Resources, including commission reports, sales contests sales promotions, new employee interviewing and training, creating training and job manuals. She was also responsible for assisting with jewelry appraisals, customer complaints and special orders, jewelry buying and inventory,

merchandising cases and creating and setting up window displays, dealing with computer issues, locating and ordering any items needed by store staff to do their jobs, shipping and receiving.

18.     Plaintiff had no supervisory responsibilities, did not set policy, did not hire or fire employees, did not sign checks or contracts on behalf of Defendant without express permission from Defendant Levin, and did not regularly exercise discretion and independence with respect to matters of significance.

19.     At all times during her employment with Defendant, Plaintiff was not paid overtime at the rate of one and one-half times her regular hourly rate for overtime as that term is defined by FLSA.

20.     During the relevant period, Plaintiff was paid a straight salary of $1200 per week, whether she worked 40 hours per week or more than 40 hours per week.

21.     Throughout her employment, Plaintiff regularly worked approximately forty-five (45) to sixty (60) hours per week, and frequently worked seven days per week, including holidays.

22.     In addition to the hours worked at Malloves' retail location, Plaintiff usually worked three (3) to four (4) hours per week from her home computer, designing ads, promoting special events, and drafting agendas, sales plans and employee memos for Defendant Levin, as well as putting in extra hours for special events, such as Facebook Live Shopping Events, Ladies Night and Toy Drive each December, and specialty jewelry shows and book signings.

23.     On March 18, 2021, April 29, 2021, February 22, 2022, March 3, 2022, October 6, 2022, and January 6, 2023, Defendants held Facebook Live shopping events, which required Plaintiff to spend an additional six (6) hours preparing for and running

each Facebook Live presentation. Plaintiff was not paid any compensation for these additional hours worked.

24.     Although Defendants purportedly paid Plaintiff a straight $1200 wage per week, any time worked less than 40 hours per week resulted in time being deducted from Plaintiff's weekly paycheck. For instance, if Plaintiff missed three (3) hours of work due to a medical appointment or treatment, three (3) hours of time was deducted from her paycheck, no matter how many hours she did work that week.

25.     During the last three years of her employment, Defendants failed to pay Plaintiff overtime compensation, as required by the FLSA and CMWA, for all the hours she worked in excess of forty per workweek.

26.     Throughout her employment, due to his position as owner and manager of Malloves, Defendant Levin subjected Plaintiff to an ongoing, continuous, and egregious course of sexual harassment and discrimination.

27.     Defendant Levin possessed superior physical size and strength compared to Plaintiff, and he used this superior physical strength to physically abuse Plaintiff.

28.     On more than one occasion, and despite her protests, Defendant Levin subjected Plaintiff to physical abuse by hitting and punching her and in one instance, he slammed Plaintiff's head with a clipboard, phonebook, and his fists.

29.     In another instance, Defendant Levin told Plaintiff to "shut up," and then he bit her lip to make her stop talking. Plaintiff still has permanent scarring from this incident.

30.     In spite of Plaintiff's protests, Defendant Levin intentionally grabbed her breasts and other private areas, farted on her, spit on her, pinched her nipples, rubbed his genitals against Plaintiff, kissed her, and licked her.

31.     On more than one occasion, and despite her protests, Defendant Levin subjected Plaintiff to verbal abuse. For example, he would call her "his bitch" in front of other employees, customers, and vendors. He would also call Plaintiff fat, stupid, lazy, and ugly.

32.     When Plaintiff would resist this abusive treatment and make clear that Defendant Levin's actions were unwelcome, he would continue his abuse, telling Plaintiff that "fat girls should be happy for the attention."

33.     In response to Plaintiff attempting to protest or speak out against Defendant Levin's verbal and/or physical abuse, he would also "banish" her to a small room upstairs at the back of the building. He would make Plaintiff stay up there until he called her back down. Sometimes this was for a few minutes, but sometimes it would be for over an hour. When Plaintiff was force to remain in this small room, she was not permitted to come down and use the bathroom. If she had to use the bathroom, she was required to use a bucket Defendant Levin placed in the corner of the room.

34.     Defendant Levin repeatedly told Plaintiff that she would be unable to find a job anywhere else because of her age, her weight, and because she was "ugly," "stupid," and "incompetent." After years of enduring this abuse, Plaintiff was conditioned to believe his words and she continued to work for Defendant Malloves.  Plaintiff also continued to work for Defendant Malloves' because Defendant Levin frequently promised her that she would take over the store when he retired. In July 2022, he informed Plaintiff that he planned to retire in five years.

35.     Plaintiff has suffered from agoraphobia and panic attacks since she was 16 years old. Defendant Levin was aware of her condition.

36.     Defendant Levin's outrageous, egregious, and offensive treatment of Plaintiff exacerbated these conditions, frequently causing panic attacks and overwhelming anxiety.

37.     On many occasions, Plaintiff requested time off to attend therapy to treat her anxiety. In response, Defendant Levin would sometimes refuse to allow her to take the time. Other times he would tell her it was okay up until the time she had everything arranged, and then he would deny her requests for time off.

38.     If Plaintiff chose to go to therapy anyways, Defendant Levin would dock her pay despite his incorrect assertions that she was a salaried employee.

39.     On March 25, 2023, Plaintiff was injured on the job while assisting a co-worker, hitting her head on the corner of a breaker box with enough force to result in a serious cut to her scalp, which bled profusely. She experienced symptoms of concussion including pain, double vision, dizziness, nausea, and vomiting. Despite her injury, Plaintiff was not permitted to leave work and seek medical assistance, because Defendant Levin was away on vacation and the store was short-staffed.

40.     Two days after her on the job injury, on March 27, 2023, Plaintiff informed Defendant Levin that she needed to go to therapy for her agoraphobia.

41.     The next day, on March 28, 2023, Plaintiff received an unsolicited call from a staff member at Rushford Treatment Center informing her that they were coming to her home to evaluate her.

42.     Upon information and belief, Defendant Levin arranged for someone from Rushford to evaluate her.

43.     Plaintiff was unaware that Defendant Levin contacted Rushford, and she did not give him permission to share her private health information.

44.     When Plaintiff informed Defendant Levin that he had violated HIPAA laws by contacting Rushford without Plaintiff's knowledge or permission, Defendant Levin's only comment was "oops."

45.     On March 31, 2023, Defendant Levin told Plaintiff her that she could not return to work until she completed a 30-day inpatient program, and he insisted that it be at High Watch Recovery in Kent, CT. On the same day, Plaintiff also received a call from her treating psychiatrist who informed her Defendant Levin had contacted him regarding Plaintiff. The psychiatrist refused to discuss Plaintiff's treatment with him and informed Defendant Levin that his behavior was egregious.

46.     On April 2, 2023, when Plaintiff contacted High Watch Recovery as Defendant Levin insisted, she learned that it was a facility that only treated drug addiction, and none of their staff was certified to deal with mental health issues, such as agoraphobia.

47.     Plaintiff is not a drug addict and had never been aggressive or violent.

48.     When Plaintiff informed Defendant Levin that High Watch only treated drug addiction, Defendant Levin changed his story and denied telling her that she needed to go to a 30-day inpatient facility.

49.     On April 5, 2023, Defendant Levin contacted Plaintiff and informed her that he was terminating her employment, claiming that she had damaged her work computer. He offered her three months of health insurance and told her he would not "fight her" on unemployment compensation. He included a separation agreement which stated that she had erased the contacts of her workstation computer, which Plaintiff was hesitant to sign without consulting an attorney. When Plaintiff informed Defendant Levin that she wanted

to consult with an attorney, despite language in the agreement that stated she had such a right, Defendant informed her that the offer for a separation agreement was revoked.

50.     Thereafter, Defendant Levin also canceled Plaintiff's health insurance, despite him telling her she would have it for three months, making it impossible for her to obtain any medical treatment.

**COUNT ONE:      VIOLATION OF THE FAIR LABOR STANDARDS ACT (as against Defendants Malloves and Levin)**

1-50   Paragraphs one through fifty above are incorporated by reference and made paragraphs one through fifty of Count One as though fully set forth herein.

51.     At all times during the course of her employment with Defendants, Plaintiff performed job duties which rendered her non-exempt under the Fair Labor Standards Act ("FLSA").

52.     The FLSA requires Defendants to pay overtime compensation for all hours worked in excess of forty hours in a work week at the rate of one and one half (1½) times the regular hourly rate.

53.     Plaintiff is entitled to overtime compensation for hours worked in excess of forty hours per week for periods in which she worked.

54.     Defendants failed to accurately report, record and/or preserve records of hours worked by Plaintiff sufficient to determine her wages, hours and other conditions and practices of employment, in violation of the FLSA.

55.     Defendants failed to pay Plaintiff any compensation for any hours over 40 worked in a single work week, including the rate of one and one half (1½) times the regular hourly rate to which she was entitled, thereby violating the FLSA and its implementing regulations.

56.     Defendants were aware that the practices described in this Complaint were unlawful, and knowingly and intentionally violated the FLSA.

57.     By virtue of the above, Defendants violated the FLSA.

58.     As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to recover all overtime hours worked computed at one and one-half times her regular hourly rate, liquidated damages, attorneys' fees and costs, and all other remedies available at law or in equity.

**COUNT TWO:       VIOLATION OF CONNECTICUT MINIMUM WAGE ACT (as against Defendants Malloves and Levin)**

1-50    Paragraphs one through fifty above are incorporated by reference and made paragraphs one through fifty of Count Two as though fully set forth herein.

59.     At all relevant times, Defendants were an "employer" within the meaning of Conn. Gen. Stat. §§ 31-58(d) and 31-71a(1).

60.     At all relevant times, Defendants employed the Plaintiff within the meaning of Conn. Gen. Stat. § 31-58(g).

61.     At all relevant times, the Plaintiff was an employee of Defendants within the meaning of §§ 31-58(e) and 31-71a(2).

62.     Defendants, for all of the reasons articulated above, violated Plaintiff's right to be paid overtime wages as required by the Connecticut Minimum Wage Act.

63.     Plaintiff was misclassified as exempt under the CMWA and is entitled to overtime compensation under that statute during the period of time in which she was employed by Defendants.

64.     Under the CMWA and its implementing Regulations, Defendants were required to pay Plaintiff one and one (1½) half times the regular rate of pay for all hours worked in excess of forty hours in a workweek.

10

65.     Defendants failed to pay Plaintiff any compensation for any hours over 40 worked in a single work week, including the rate of one and one half (1½) times the regular hourly rate to which she was entitled, thereby violating the CMWA and its implementing regulations.

66.     Defendants willfully violated the CMWA by knowingly and intentionally failing to pay Plaintiff overtime wages.

67.     As a result of Defendants' willful violations of the CMWA, Plaintiff is entitled to recover unpaid overtime wages, reasonable attorneys' fees and costs, and liquidated damages.

**COUNT THREE:    VIOLATION OF CONNECTICUT GENERAL STATUTE § 31-72
(as against Defendants Malloves and Levin)**

1-50    Paragraphs one through fifty above are incorporated by reference and made paragraphs one through fifty of Count Three as though fully set forth herein.

68.     Defendants, for all of the reasons articulated above, violated Plaintiff's right to be paid overtime wages as contained in the Connecticut Minimum Wage Act.

69.     Plaintiff was misclassified as exempt under the CMWA and is entitled to overtime compensation under that statute during the period of time in which she was employed as an Office Manager.

70.     Defendants failed to pay Plaintiff proper overtime compensation for hours worked in excess of forty per week.

71.     Defendants have a policy and practice of failing and refusing to play Plaintiff for all hours worked in violation of the Connecticut Minimum Wage Act, C.G.S. § 31-58, et seq.

72.     Defendant's violations of the CMWA were unreasonable, arbitrary and/or in bad faith.

11

73.     As a result of Defendants' willful violations of the CMWA, Plaintiff has been deprived of earned wages in amounts to be determined at trial.  Plaintiff is entitled to unpaid overtime compensation.

74.     In addition, Plaintiff is entitled to penalty (or double) damages, interest, attorneys' fees and costs, and any other relief she is entitled to under law or in equity.

**COUNT FOUR:     HARASSMENT AND DISCRIMINATION BASED ON GENDER IN VIOLATION OF CFEPA, CONN.  GEN. STAT. § 46a-60(b)(8) (as against Defendant Malloves)**

1-50    Paragraphs one through fifty above are incorporated by reference and made paragraphs one through fifty of Count Four as though fully set forth herein.

75.     Based on the foregoing, Plaintiff was discriminated against in the terms and conditions of her employment on the basis of her gender, in violation of CFEPA.

76.     Defendant discriminated against Plaintiff by harassing her, subjecting her to a hostile work environment, and ultimately terminating her employment.

77.     Plaintiff was subjected to an ongoing and continuing pattern of sexual harassment based on her sex by Defendant Levin, who was in a supervisory role over Plaintiff.

78.     Defendant Levin repeatedly made unwelcome sexual advances to Plaintiff.

79.     Defendant Levin, on many occasions, touched Plaintiff's private parts without her consent.

80.     Defendant Levin engaged in this conduct to intimidate and humiliate Plaintiff.

81.     When Plaintiff rejected or resisted Defendant's sexual advances she would be further berated or physically locked in another room where the only way she could use the bathroom was in a bucket provided by Defendant.

82. Defendant's actions were undertaken frequently.

83. Defendant's actions unreasonably interfered with Plaintiff's work performance and created a hostile work environment.

84. Defendant's actions exacerbated Plaintiff's agoraphobia and increased the rate at which she experienced panic attacks.

85. The aforementioned actions on the part of Defendant towards Plaintiff were intentional in that they were willful, wanton, and/or were taken in reckless disregard of Plaintiff's rights.

86. As a result of the Defendant's unlawful conduct, Plaintiff has suffered damages including, but not limited to, lost wages and benefits, compensatory damages, economic damages, emotional distress, loss of enjoyment of life, and loss of enjoyment of profession.

87. As a further result of the actions of Defendants, Plaintiff has incurred and will continue to incur attorneys' fees and costs in pursuing this action.

**COUNT FIVE:      GENDER DISCRIMINATION IN VIOLATION OF CFEPA, CONN. GEN. STAT. § 46a-60, *et. seq.***

1-50   Paragraphs one through fifty above are incorporated by reference and made paragraphs one through fifty of Count Five as though fully set forth herein.

88. Based on the foregoing, Plaintiff was harassed, discriminated against, subjected to disparate treatment, and ultimately terminated because of her gender in violation of the CFEPA, Conn. Gen. Stat. § 46a-60, et seq.

89. Defendant Levin made derogatory comments about Plaintiff's gender throughout her employment and, when she would resist his advances, made comments such as "fat girls should be happy for the attention."

90.     Defendant's acts were intentional in that they were willful, wanton, and/or were taken in reckless disregard of Plaintiff's rights.

91.     As a result of the Defendant's unlawful conduct, Plaintiff has suffered damages including, but not limited to, lost wages and benefits, compensatory damages, economic damages, emotional distress, loss of enjoyment of life, and lost of enjoyment of profession.

92.     As a further result of the actions of Defendants, Plaintiff has incurred and will continue to incur attorneys' fees and costs in pursuing this action.


**COUNT SIX:        INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
                   **(As against Defendants Malloves and Levin)**

1-50    Paragraphs one through fifty above are incorporated by reference and made paragraphs one through fifty of Count Six as though fully set forth herein.

93.     Based on the foregoing, Defendant Levin, acting within the scope of his duties and authority as an owner of Malloves and in furtherance of Malloves business, intended to inflict emotional distress upon Plaintiff, or knew or should have known that emotional distress was the likely result of his conduct.

94.     Defendants' conduct towards Plaintiff was extreme and outrageous, in that it was beyond the bounds of decency tolerated in a civilized society.

95.     Defendants' conduct caused Plaintiff to suffer emotional distress, and said emotional distress was severe.

96.     As a result of Defendant' 'violation of her rights, Plaintiff has suffered severe emotional distress and psychological trauma.

97.     Defendants acted with reckless disregard of Plaintiff's rights, thereby entitling her to punitive damages.

14

**COUNT SEVEN:    BATTERY (as against Defendants Malloves and Levin)**

1-50   Paragraphs one through fifty above are incorporated by reference and made paragraphs one through fifty of Count Seven as though fully set forth herein.

98.    Based on the foregoing, on a number of occasions, Defendant Levin, acting within the scope of his duties and authority as an owner of Malloves and in furtherance of Malloves' business, grabbed Plaintiff's breasts and other private areas, farted on her, spit on her, pinched her nipples, and rubbed his genitals against Plaintiff.

99.    Defendant Levin thus intentionally and without consent made physical contact with Plaintiff's person that would be offensive to a reasonable person.

100.    Defendants' battery of Plaintiff caused Plaintiff physical and emotional injury.

101.    As a result of Defendants' actions, Plaintiff has suffered damages. including but not limited to, loss of enjoyment, mental anguish, and emotional distress.

102.    Plaintiff has also incurred and will continue to incur attorney's fees and costs in pursuing this claim.


**COUNT EIGHT:    ASSAULT**

1-50   Paragraphs one through fifty above are incorporated by reference and made paragraphs one through fifty of Count Eight as though fully set forth herein.

103.    On a number of occasions, Defendant Levin, acting within the scope of his duties and authority as an owner of Malloves and in furtherance of Malloves' business, subjected Plaintiff to physical abuse by hitting and punching her; slamming Plaintiff's head with a clipboard, phone book and his fists; grabbed Plaintiff's breasts and other private areas, farted on her, spit on her, pinched her nipples, and rubbed his genitals against

15

Plaintiff. In another instance, Defendant Levin told Plaintiff to "shut up," and then he bit her lip to make her stop talking.

104.    The actions that Defendant Levin intentionally took against Plaintiff placed her in imminent apprehension of an harmful or offensive contact.

105.    Based on the foregoing, Plaintiff was assaulted by Defendant Levin on a number of occasions.

106.    The aforementioned conduct on the part of Defendant Levin was intentional in that it was willful, wanton and/or taken without the exercise of due care.

107.    As a result of the aforementioned unlawful acts of Defendant, Plaintiff has suffered damages, including but not limited to, loss of enjoyment, mental anguish, and emotional distress.

108.    Plaintiff has also incurred and will continue to incur attorney's fees and costs in pursuing this claim.

**COUNT NINE:        RETALIATION IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, CONN. GEN. STAT. § 46a-60, _et seq_. ("CFEPA")**

109.    On July 6, 2023, Defendant's counsel waived service of Plaintiff's Complaint filed in United States District Court, District of Connecticut, alleging violations of FLSA and CMWA.

110.    On August 8, 2023 Defendants Levin and Malloves received service of Plaintiff's complaint filed with the Connecticut Commission on Human Rights and Opportunities alleging sexual harassment, discrimination and retaliation.

111.    On August 22, 2023, in retaliation for Plaintiff's aforementioned complaints, Defendants Levin and Malloves filed and served an Application for Pre-judgment Remedy

in Connecticut Superior Court, Judicial District of Middlesex, No. MMX-CV23-5016264-S. In its filing, Defendant alleged that Plaintiff stole property from Defendants and is liable for treble damages in the amount of $422,012.55.

112.    In a Complaint dated September 5, 2023, in retaliation for Plaintiff's complaints, Defendants Levin and Malloves filed and served a Complaint on Plaintiff in Connecticut Superior court, Connecticut Superior Court, Judicial District of Middlesex, No. MMX-CV23-5016264-S.  In its Complaint Defendants allege Breach of Fiduciary Duty (Count One); Statutory Theft (Count Two); Conversion (Count Three); Unjust Enrichment (Count Four); Violation of the Connecticut Unfair Trade Practices Act (Count Five); Declaratory Judgment/Injunctive Relief (Count Six).

113.    Plaintiff engaged in protected activity when she objected to Defendants' discriminatory practices, including a sexually hostile work environment, when she filed a complaint with the CHRO on July 6, 2023.

114.    Defendant retaliated against Plaintiff for her protected activity by subjecting her to harassment through a lawsuit and Application for PreJudgment Remedy.

115.    Defendants' actions were intentional in that they were willful, wanton and taken with reckless disregard of Plaintiff's rights.

116.    As a result of Defendants' retaliatory actions, Plaintiff has suffered damages, including but not limited to compensatory damages and emotional distress.

117.    As a further result of Defendants' retaliatory actions, Plaintiff has incurred and will continue to incur, attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

a. Lost wages, lost employment benefits, loss of enjoyment of life, loss of
   enjoyment of profession, emotional distress, humiliation, and embarrassment;

b. Punitive damages pursuant to common law;

c. An award of unpaid wages under the Fair Labor Standards Act;

d. An award of unpaid wages under the Connecticut Minimum Wage Act;

e. An award of unpaid wages under Conn. Gen. Stat. § 31-72;

f. An award of liquidated damages under the Fair Labor Standards Act;

g. An award of penalty damages under the Connecticut Minimum Wage Act;

h. An award of penalty damages under Conn. Gen. Stat. § 31-72;

i. Interest and costs;

j. Attorneys' fees and costs under the Fair Labor Standards Act, the Connecticut
   Minimum Wage Act, and Conn. Gen. Stat. § 31-72;

k. Such other relief as in law or equity may pertain.

## JURY TRIAL DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

By: _____*/s/ Claire M. Howard*_____
    Claire M. Howard (ct29654)
    Madsen, Prestley & Parenteau, LLC
    402 Asylum Street Hartford, CT 06103
    Tel.: (860) 246-2466
    Fax: (860) 246-1794
    choward@mppjustice.com
    Attorney for Plaintiff

**<u>CERTIFICATION OF SERVICE</u>**

I hereby certify that on February 6, 2024, a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Claire M. Howard*
Claire M. Howard